In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00186-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


JEFFERY DWIGHT MARRIS AND


KARA JANE MULLINS MARRIS

AND IN THE INTEREST OF KAITLYN MULLINS, A CHILD





 


On Appeal from the 6th Judicial District Court


Red River County, Texas


Trial Court No. 002CV00063




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Kara Jane Mullins Marris and Jeffery Dwight Marris are the parents of Kaitlyn Mullins, a
four-year-old child. After a bench trial, the trial court named the parties as joint managing
conservators, giving Jeffery the right to establish the domicile of the child. The court further found
it to be in the best interest of the child that each parent have possession of the child for alternating
one-week periods. Kara appeals, alleging in nine points of error that the trial court abused its
discretion by placing primary custody with the father, awarding possession of the child for one week
alternating periods, overruling a motion for new trial without a hearing, and that there is no evidence
or alternatively the evidence is insufficient or against the great weight and preponderance that it is
in the best interest of the child that each conservator be awarded equal periods of possession, and
that there is no evidence or the evidence is insufficient or that the great weight and preponderance
of the evidence does not support a finding deviating from the standard possession or visitation
guidelines.

Factual Background

 Jeffery Marris testified that he has a stable job working for Turner Industries and has a home
in Red River County, Texas. His parents live near him and are available to help take care of the
child when he is working. Jeffery lives in the home where the parties lived the last few years of their
marriage, and the child is comfortable and has enough room at that home. He did assist in taking
care of the child during the marriage. Kara lives in Broken Bow, Oklahoma, with her parents, and
they all smoke, which he believes causes the child to become ill. Jeffery believes Kara is seeing a
truck driver. Jeffery works from 3:00 p.m. until 11:00 p.m. and leaves the child with a babysitter. 
Jeffery and Kara have complied with the temporary visitation schedule that has been in effect. 

 Kara is not presently employed. She has recently been hospitalized. She acknowledges that
Jeffery is a good father and is capable of taking care of the child. Kara denies having a boyfriend. 
Kara acknowledged that Jeffery has been living in the home with the child for the last two years
during their marriage, that it is a nice home, and that his parents live nearby and are good people who
have kept the child quite a bit too. Kara further testified she and Jeffery separated when she was five
months pregnant, and Jeffery had nothing to do with the child for five months. The child had been
with Kara constantly since she was born. Kara and Jeffery resumed living together when the child
was six months old. Kara has the child enrolled in a pre-kindergarten class at Broken Bow. When
Kara was working, her mother kept the child. 

 At the conclusion of the hearing, the trial court named the parties as joint managing
conservators and found Jeffery should be the conservator with exclusive right to determine the
primary residence of the child. The trial court further found that each parent should have possession
of the child for alternating one-week periods. The court in its findings of fact and conclusions of law
found that the possession periods should deviate from the standard guidelines so as to encourage
frequent contact between the child and each parent and to optimize the development of a close and
continuing relationship between them. 

 The law is well established and codified as follows:

 1. It is a rebuttable presumption that the appointment of the parents of a child as joint
managing conservators is in the best interest of a child. Tex. Fam. Code Ann. § 153.131 (Vernon
2002).

 2. In rendering an order appointing joint managing conservators, the court shall: 
(a) designate a conservator who has the exclusive right to determine the primary residence of the
child; and may specify that the conservator may determine the child's primary residence without
regard to geographic location. Tex. Fam. Code Ann. § 153.134(b)(1) (Vernon 2002).

 3. Joint managing conservatorship does not require the award of equal or nearly equal
periods of physical possession of or access to the child for each of the joint conservators. Tex. Fam.
Code Ann. § 153.135 (Vernon 2002). 

 4. If joint managing conservatorship is ordered, the best interest of a child ordinarily
requires the trial court to designate a primary physical residence for the child. Tex. Fam. Code Ann.
§ 153.136 (Vernon 2002). 

 5. The standard possession order constitutes a presumptive minimum amount of time
for possession of a child by a parent named as joint managing conservator who is not awarded the
primary physical residence of a child. Tex. Fam. Code Ann. § 153.137 (Vernon 2002).

 6. The best interest of the child shall always be the primary consideration of the trial
court in determining the issues of conservatorship and possession of and access to a child. Tex.
Fam. Code Ann. § 153.002 (Vernon 2002).

Did the trial court err in allowing the father to establish 

the primary residence of the child? 


 The trial court's determination of conservatorship is reviewed under an abuse of discretion
standard. Trial courts have wide discretion with respect to custody, control, possession, support, and
visitation matters involving the child. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982);
Doyle v. Doyle, 955 S.W.2d 478, 480 (Tex. App.-Austin 1997, no writ). In a review applying an
abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent
grounds of error, but are treated as relevant factors in assessing whether the trial court abused its
discretion. In re Bertram, 981 S.W.2d 820, 822 (Tex. App.-Texarkana 1998, no pet.); In re Driver,
895 S.W.2d 875, 877 (Tex. App.-Texarkana 1995, no writ). Therefore, the sufficiency of evidence
points will be considered in determining the issue of abuse of discretion. 

 Under an abuse of discretion standard, a trial court abuses its discretion when it acts in an
arbitrary or unreasonable manner, or when it acts without reference to any guiding rules or principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). An abuse of discretion does not
occur when the trial court bases its decision on conflicting evidence.  Valdez v. Valdez, 930 S.W.2d
725, 731 (Tex. App.-Houston [1st Dist.] 1996, no writ). There is no abuse of discretion if some
evidence of a substantive and probative character supports the decision. Holley v. Holley, 864
S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

 The evidence presented in this record is very brief, consisting of twenty-six pages of
testimony for the entire trial. Kara agreed that Jeffery was capable of taking care of the child. Both
parents have had some participation in the child-rearing. Evidence was presented that Jeffery had
stable employment and a home that was comfortable to the child. His parents live nearby and are
able to assist him with the child when needed. 

 The trial court faces the parties and the witnesses, observes their demeanor and personality,
and feels the forces, powers, and the influences that cannot be discerned by merely reading the
record. The trial court is, therefore, in a better position to analyze the facts, weigh the virtues of the
parties, and determine what would be in the best interest of a child. Bertram, 981 S.W.2d at 826. 
In this case, the trial court heard the evidence in making its decision. The trial court stated that it felt
the father was in a more stable situation than the mother. We cannot conclude that the trial court
abused its discretion in naming the parties as joint managing conservators and designating Jeffery
as the conservator to establish the primary residence of the child. 

Possession and Access to the Child

 Kara further contends the trial court abused its discretion by authorizing alternating equal
periods of one-week possession and access by each parent. Kara also contends the trial court erred
by deviating from the standard possession order. Joint managing conservatorship does not require
an "equal or nearly equal periods of physical possession." Tex. Fam. Code Ann. § 153.135. Equal
time is neither prohibited nor recommended. Albrecht v. Albrecht, 974 S.W.2d 262, 265 (Tex.
App.-San Antonio 1998, no pet.). Kara argues that, due to geographical proximity, this order is not
in the best interest of the child and is disruptive. Kara lives in Broken Bow, Oklahoma, and Jeffery
lives in Red River County, Texas. We will take judicial notice that Red River County, Texas, and
McCurtain County, Oklahoma, are adjoining counties separated by the Red River and that it is
approximately forty-four miles from Clarksville, Texas, the county seat of Red River County, to
Broken Bow, Oklahoma. Tex. R. Evid. 201(b)(2). Therefore, the geographical proximity would
not, standing alone, create an abuse of discretion.

 The standard possession order constitutes a presumptive minimum amount of time for
possession of a child by a parent named as a joint managing conservator who is not awarded the
primary physical residence of a child. Tex. Fam. Code Ann. § 153.137. In this case, the trial court
awarded Kara considerably more time of possession with the child than the standard order requires.
While joint managing conservatorship does not require an equal or nearly equal period of physical
possession, such an order is clearly authorized. Albrecht, 974 S.W.2d at 265. In this case, the trial
court exceeded the presumptive minimum amount of time Kara otherwise would have with the child. 
The court found it is in the child's best interest that each party have equal periods of physical
possession. It is a reasonable conclusion the child is best served by having an equal amount of time
with each parent. This is a deviation in the standard possession order, but one that grants Kara more
time with her child. The fact that an appellate court might decide a matter differently does not
establish an abuse of discretion when the matter was one solely within the trial court's discretionary
authority. In re J.E.P., 49 S.W.3d 380, 386 (Tex. App.-Fort Worth 2000, no pet.). We do not
believe the trial court abused its discretion in granting each parent equal time for alternating
one-week periods.

Did the trial court err and abuse its discretion in overruling 

Kara's motion for new trial?


 Kara filed a motion for new trial which the trial court overruled without hearing evidence. 
Attached to her motion for new trial were eight affidavits. The affidavits were from Kara, her
mother, her stepfather, her brother, her sister-in-law, and three friends. Generally speaking, a party
may not present any additional evidence in a motion for new trial, where that evidence is not newly
discovered. See Hillert v. Melton, 64 S.W.2d 991, 992 (Tex. Civ. App.-San Antonio 1933, writ
ref'd). However, in matters relating to child custody, it can be error to refuse to grant a motion for
new trial, even though the evidence is not newly discovered, where there is an extreme case and the
evidence is sufficiently strong. In re C.B.N., 14 S.W.3d 855, 861 (Tex. App.-Beaumont 2000, no
pet.); C___ v. C___, 534 S.W.2d 359, 361-62 (Tex. Civ. App.-Dallas 1976, writ dism'd). Even
under this relaxed standard, no abuse of discretion is shown unless the evidence presented in support
of a motion, and not offered at the original trial, strongly shows that the original custody order would
have a seriously adverse effect on the interest and welfare of the child and that presentation of such
evidence at another trial would probably change the result. C___, 534 S.W.2d at 362.

 In this case, the affidavits presented many of the same allegations that were presented at the
trial. Examples are that the mother was the primary caretaker, the hours the father worked, that the
father would leave the child with a babysitter during work, that he did not live with and see the child
for the first five months of her life, and that he originally denied paternity of the child.

 We find the evidence that Kara presented by affidavits was cumulative of other evidence
presented at trial. There is no evidence that would strongly show that the original custody order
would have a seriously adverse effect on the child and, therefore, there is no indication that such
evidence would probably change the result. The point of error is overruled.

 We affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: July 14, 2003

Date Decided: July 15, 2003



-align: justify; line-height: 0.416667in">          If a phrase, term, or word is statutorily defined, the trial court must submit the
statutory definition to the jury. Moore v. State, 82 S.W.3d 399, 408 (Tex. App.—Austin
2002, pet. ref'd). We are, as is any other court, without the power to legislate and read into
the statute something omitted by the Legislature by adding to the jury instruction words or
standards not expressed in the statute. Barkley v. State, 152 Tex. Crim. 376, 214 S.W.2d
287, 291–92 (1948) (op. on reh'g); Murphy, 44 S.W.3d at 664. Therefore, we must
presume the jury knew and applied the common and ordinary meaning to the words
included in the jury charge. See Martinez v. State, 924 S.W.2d 693, 698 (Tex. Crim. App.
1996).
          C.       Trial Court Properly Refused Proposed Instruction
          Essentially, Drichas' contention is the jury charge should have included words
reflecting the standard of review to be applied when examining the sufficiency of the
evidence to support a deadly weapon finding. Merely because his proposed instruction is
a correct statement of that standard is not an adequate reason for including it in the court's
charge to the jury. Unnecessary instructions should not be given, even if they are correct
statements of law. See Pinnacle Gas Treating, Inc. v. Read, 69 S.W.3d 240, 246 (Tex.
App.—Waco 2002), rev'd & remanded on other grounds, 104 S.W.3d 544 (Tex. Crim. App.
2003), quoting Raiford v. May Dep't Stores Co., 2 S.W.3d 527, 533 (Tex. App.—Houston
[14th Dist.] 1999, no pet.). Unnecessary instructions single out or highlight issues, and in
so doing run the risk of being comments on the weight of the evidence. Pinnacle Gas
Treating, Inc., 69 S.W.3d at 246.  
          Here, the trial court properly included the statutory definition of "deadly weapon." 
Based on the foregoing rules and limitations, we conclude the trial court did not err in
refusing to include additional language describing the term "deadly weapon." We overrule
Drichas' contention.
IV.      Legal and Factual Sufficiency of the Evidence
          Drichas also challenges the legal and factual sufficiency of the evidence to support
the jury's finding that he used his truck as a deadly weapon in the commission of the
offense. Specifically, he argues the State failed to prove his driving placed someone else
in danger of serious bodily injury or death. 
          A.       Standards of Review
          For legal sufficiency purposes, the question for the reviewing court is whether,
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime (or finding) beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); McCain v. State, 22 S.W.3d 497,
503 (Tex. Crim. App. 2000). Specifically, we review the record to determine whether, after
viewing the evidence in the light most favorable to the State, any rational trier of fact could
have found beyond a reasonable doubt the truck was used as a deadly weapon. See
Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).
          When reviewing a challenge to the factual sufficiency of the evidence to support the
jury's finding, the court must determine whether, considering all the evidence in a neutral
light, the jury was rationally justified in its finding beyond a reasonable doubt. Zuniga v.
State, 144 S.W.3d 477 (Tex. Crim. App. 2004). There are two ways in which the court may
find the evidence to be factually insufficient. First, if the evidence supporting the finding,
considered alone, is too weak to support the jury's finding beyond a reasonable doubt, then
the court must find the evidence insufficient. Id. Second, if—when the court weighs the
evidence supporting and contravening the finding—it concludes that the contrary evidence
is strong enough that the state could not have met its burden of proof, the court must find
the evidence insufficient. Id. "Stated another way, evidence supporting [the finding] can
'outweigh' the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard." Id. 
          B.       A Vehicle as a Deadly Weapon
          The Penal Code defines the term "deadly weapon":
(A) a firearm or anything manifestly designed, made, or adapted for
the purpose of inflicting death or serious bodily injury; or 
 
(B) anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury.

Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon Supp. 2004–2005). Section 1.07's plain
language does not require that the actor actually intend death or serious bodily injury; an
object is a deadly weapon if the actor intends a use of the object in which it would be
capable of causing death or serious bodily injury. McCain, 22 S.W.3d at 503. The
placement of the word "capable" in the provision enables the statute to cover conduct that
threatens deadly force, even if the actor has no intention of actually using deadly force. 
Id.; Tisdale v. State, 686 S.W.2d 110, 114–15 (Tex. Crim. App. 1984) (op. on reh'g). If
driven so as to endanger lives, a motor vehicle can clearly be a deadly weapon. Cates,
102 S.W.3d at 738; Tyra v. State, 897 S.W.2d 796, 798–99 (Tex. Crim. App. 1995);
Ex parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992).
          To sustain a deadly weapon finding, there must be evidence that others were
actually endangered, "not merely a hypothetical potential for danger if others had been
present." Mann v. State, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), aff'd, 58 S.W.3d 132
(Tex. Crim. App. 2001) (emphasis added). While a deadly weapon finding does not require
that the object actually cause death or serious bodily injury, it does require that the object
have more than a hypothetical capability of causing death or serious bodily injury. 
Johnston v. State, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003, pet. ref'd). We must
evaluate the "capability" of causing death or serious bodily injury in light of the facts that
actually existed while the charged offense was committed, rather than conjecture about
what might have happened if the facts had been somewhat different. Williams v. State,
946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), rev'd in part on other grounds, 970
S.W.2d 566 (Tex. Crim. App. 1998) (concluding that proper remedy when appellate court
sustains challenge to sufficiency of evidence to support deadly weapon finding is ordering
deletion of deadly weapon finding rather than ordering new trial on punishment). 
          C.       Relevant Cases
          In Williams, the state presented evidence Williams possessed the truck and also
used the truck during his comission of the felony offense of driving while intoxicated (DWI). 
By doing that, he both used and actively employed the truck while committing the DWI
felony. Id. at 435. However, there was no evidence that any other person encountered
danger from Williams' truck: 
[T]here is no evidence that any other motorist was on the highway at the time
and place that Williams drove in an intoxicated condition or that any other
motorist (besides other troopers the arresting officer called for assistance)



ever came upon the scene or encountered danger from Williams' truck or
from other traffic because the truck was parked in the highway.

Id. at 435–36. Therefore, the Fort Worth Court of Appeals concluded, the state failed to
prove that, in the manner of its use, or intended use, Williams' truck was capable of
causing death or serious bodily injury. Accordingly, there should not have been a deadly
weapon issue in the jury charge on punishment. Id. at 436.
          In Davis v. State, 964 S.W.2d 352, 354 (Tex. App.—Fort Worth 1998, no pet.), the
Fort Worth Court of Appeals factually distinguished its earlier opinion in Williams by
pointing to the testimony of the arresting officer that Davis weaved and drove into the
oncoming lane of traffic four or five times, and had to take "evasive action" to avoid hitting
another car in the oncoming lane.
          In another case, one also involving charges of felony DWI, the testimony showed
that the appellant, Mann, "almost hit another vehicle head-on" when Mann's vehicle
crossed the centerline, and that a collision did not occur only because the oncoming
vehicle "took evasive action." Mann, 13 S.W.3d at 92. Additionally, an officer experienced
in reconstructing accidents testified a collision under those circumstances was capable of
causing death or serious bodily injury. Id. The Austin Court of Appeals held there was
sufficient evidence to support the finding that Mann used his vehicle in a manner capable
of causing serious bodily injury or death during the commission of the felony DWI offense. 
Id.
          D.       Evidence was not Legally and Factually Sufficient to Show Actual                         Endangerment

          While the record in the instant case contains ample evidence that Drichas drove in
a reckless manner, we do not find evidence that, during the fifteen-mile chase, Drichas'
driving actually placed another person in danger. Based on Williams and Mann, evidence
that an accused drove recklessly is insufficient to meet the state's burden of showing that
he or she used a vehicle as a deadly weapon during the commission of the offense
charged.
                     1.       Evidence Shows Hypothetical Danger, not Actual Endangerment
          Mowery, the officer who initiated the chase on the Arkansas side of Texarkana,
testified Drichas nearly caused an accident when Drichas first pulled out of the gasoline
station parking lot in a reckless manner:
So when the defendant pulled out in front of me, it was a quick thing where
I could barely see him. I had to hit my brakes pretty hard to prevent from
having an accident.

          We first note this incident occurred, as Mowery conceded, before the commission
of the alleged offense: 
Q.. . . did you almost running into the defendant's truck have
anything to do with him running, evading Texarkana, Texas police officers for
fifteen miles?
 
A.No.
 
Q.Does it have anything to do with -- Does what didn't happen at
the store, does that have anything to do with the defendant evading police
in a vehicle?
 
                     A.No.

Therefore, we cannot say this near mishap between Mowery and Drichas qualifies as use
of a deadly weapon during the commission of the offense charged.


 
          Mowery testified to the reckless manner in which Drichas drove during the fifteen-
mile chase, describing how Drichas failed to stop at stop signs, turned in a way that caused
him to temporarily lose traction on the back end of his truck and nearly ended up on the
steps of the Bi-State Justice Building, and how he traveled up to seventy miles per hour
through downtown streets. Mowery stated that, while "there wasn't a lot" of traffic out at
the time of the chase, there was some. Mowery described how Drichas continued to drive
at excessive rates of speed in the wrong direction in the construction zone around
Highway 59. After Drichas had driven on Highway 59 past the lake, he turned around past
the Sulphur River bridge and headed back in the direction of the several police units
following him. 
          While evidence of the reckless maneuvers Drichas made during the chase are
relevant to the issue of whether he drove his truck in a manner sufficient to render it a
deadly weapon, based on the reasoning in Williams and Mann, such evidence, alone, is
insufficient. While it might be said that Drichas' driving potentially placed the officers at risk
of danger, there is no evidence the officers ever had to take evasive action or were placed
in the zone of danger during the course of the evasion. Put another way, there is no
evidence the officers or any other person were actually endangered. See Williams, 946
S.W.2d at 435–36. The following testimony by Mowery illustrates the failure of the State's
evidence:
Q.Was there a lot of traffic out?
 
A.No, there wasn't a lot. There was some.
 
Q.Now, during the course of this route that you took, did you at
any time see the truck attempt to run over anybody?
 
                     A.No.
 
Q.Did you see anybody having to swerve to get out of the way or
move rapidly to get out of the way of this truck?
 
A.Other than me there at the store. No, I didn't see anything,
other than me, having to avoid an accident.
 
Q.Did you see the driver in any way point the truck towards
someone or some vehicle in an attempt to run them down or harm them in
any way?
 
A.No. I did observe the defendant driving the wrong way on the
highway, though.
 
Q.I understand, but my question was he didn't point his vehicle
at any person or any other vehicle in an attempt to run them down.
 
A.Well, it was certainly pointed in the wrong direction at that
point. I'm not certain of this, but we were meeting some traffic somewhere
around that point there.
 
Q.You never saw anybody have to swerve to get out of his way?
 
A.No.
We find evidence of reckless driving, but find no evidence this reckless driving actually
endangered another person.
          There is also testimony that Drichas "blew past" a Texas officer stationed at an
intersection. This evidence, too, fails to reach the level of endangerment necessary to
show the truck was a deadly weapon in that it does not reveal that the officer was
endangered by Drichas' driving. In fact, the evidence illustrates that the officer was waiting
at the intersection to join the chase and that his position was safely outside Drichas' route. 
On cross-examination, Mowery made clear that, as Drichas sped down Fourth Street, the
waiting officer "was not on Fourth Street" and the officer "didn't have the road blocked" or
"any portion of [Fourth Street] blocked." 
          When Drichas turned around past the Sulphur River bridge, and the officers also
turned around to continue the chase, Drichas' truck was smoking and a fine mist of oil was
being emitted from it and hitting the windshields of the officers' vehicles. Again, however,
this evidence is mentioned only briefly and only incidentally, and no description of any
dangerous effects of the oil were ever elicited.
          We also examined the testimony regarding Drichas' entry into the mobile home park
and his subsequent abandonment of his moving truck. We note the truck continued to
move forward and hit a van, pushing the van into a mobile home. However, there is no
showing that a person or persons were in either the van or the mobile home. Further, there
is no evidence there was anyone in the mobile home park itself during the time the collision
occurred. To assume otherwise would require us to engage in conjecture, which we
cannot do. 
          The State is correct that the officers testified to conclusions consistent with the
language in the statutory definition of "deadly weapon":
Q.. . . And Officer Mowery, you've talked about excessive rates
of speed, you've talked about running stop signs, driving on the wrong side
of the road the defendant did that night, in your training and experience, the
manner the vehicle was used that night, was it capable of causing serious
bodily injury or death?
 
A.Yes, absolutely so.
                     . . . .
 
Q.During this car chase, we've talked about the excessive rates
of speed and the defendant driving on the wrong side of the road and
weaving, that early morning, in the manner of its use or intended use, was
that vehicle capable of causing serious bodily injury or death?
 
A.Yes, ma'am.
These conclusory assertions mirroring the statutory language simply do not provide
sufficient evidence of the actual endangerment. The state need not show that someone
was actually killed or seriously injured; it need only show that another person was actually
put in danger of serious bodily injury or death. No such evidence was adduced in this
case. 
          Even viewing this evidence in a light most favorable to the jury's verdict, we cannot
say that a rational trier of fact could conclude Drichas placed others in danger of serious
bodily injury or death. Further, viewing the evidence in a neutral light, we cannot conclude
that the jury was rationally justified in finding beyond a reasonable doubt Drichas used his
truck as a deadly weapon since there is no evidence to show that another person was
actually endangered by Drichas' use of his truck. We sustain Drichas' third and fourth
points of error.
                     2.       Deletion of Deadly Weapon and Remand for New Trial on Punishment
          We note that the Texas Court of Criminal Appeals has concluded that the proper
remedy when the state fails to sufficiently show that a defendant used a deadly weapon
during the commission of an offense is for the reviewing court to delete the affirmative
deadly weapon finding. Williams, 970 S.W.2d at 566; Narron v. State, 835 S.W.2d 642,
644 (Tex. Crim. App. 1992). Here, however, because deletion of the deadly weapon
finding changes the range of punishment available to be assessed against Drichas, we
must remand the case for a new trial on punishment. See Tex. R. App. P. 43.3.
          Evading detention is a Class B misdemeanor. Tex. Pen. Code Ann. § 38.04
(Vernon 2003). When a person evades detention with a motor vehicle, however, the
offense becomes a state jail felony. Tex. Pen. Code Ann. § 38.04(b)(1). With an
affirmative deadly weapon finding, the state jail felony of evasion of detention with a motor
vehicle becomes a third degree felony. See Tex. Pen. Code Ann. § 12.35(c) (Vernon
2003). Finally, enhancing this third degree felony under the habitual felony offenders
statute with two prior felony convictions, the punishment range then becomes from twenty-five to ninety-nine years or life in prison. See Tex. Pen. Code Ann. § 12.42(d). Removal
of the deadly weapon finding, however, also removes one of the enhancements necessary
to make evasion of detention punishable by ninety-nine years. 
          The State did, of course, show that Drichas used a motor vehicle in evading
detention, making the offense a state jail felony. See Tex. Pen. Code Ann. § 12.35(a), (b). 
However, because the State failed in showing that Drichas used that motor vehicle as a
deadly weapon, his offense should have been deemed a state jail felony, rather than a
third degree felony under Section 12.35(c)(1).


 The punishment available for a state jail
felony, enhanced with two prior felony convictions pursuant to Section 12.42(a)(2), is that
for a second degree felony: two to twenty years in prison and a fine of up to $10,000.00. 
See Tex. Pen. Code Ann. § 12.42(a)(2) (Vernon Supp. 2004–2005), § 12.33 (Vernon
2003). Therefore, without the deadly weapon finding, but considering the two prior felony
convictions alleged under the habitual felony offenders statute—which Drichas admitted
were true—the maximum punishment for this conviction is twenty years and a $10,000.00
fine. Without the deadly weapon finding, the ninety-nine-year sentence imposed is well
outside that maximum. 
 

          We delete the deadly weapon finding and remand this case to the trial court for a
new trial on punishment wherein Drichas' punishment must be assessed pursuant to
Sections 12.33 and 12.42(a)(2) of the Texas Penal Code.



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 27, 2004
Date Decided:         November 9, 2004

Publish