## PINNACLE GAS TREATING, INC., Appellant,

### v.

## Raymond Michael READ, Mark William Read, Owners, and Thomas I. Fetzer, II, Lienholder, Appellees.

### No. 10–00–200–CV.

Court of Appeals of Texas, Waco.

Jan. 9, 2002.

---

Celia S. Flowers, E. Robert Human, Flowers, Davis, Fraser, Derryberry & Van Cleef, L.L.P., Tyler, for appellant.

Karl C. Hoppess, Daniel P. Meanor, Karl C. Hoppess & Associates, P.C., for appellee Raymond Michael Read.

Jack B. Ellison, Buffalo, for appellee Mark William Read.

Joe B. Cannon, Groesbeck, for appellee Thomas I. Fetzer.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## MEMORANDUM OPINION

BILL VANCE, Justice.

This is a condemnation case. Pinnacle Gas Treating, Inc. ("Pinnacle"), the condemnor, appeals that: (1) the condemnation proceeding it filed should not have been dismissed for want of jurisdiction; and (2) the jury charge and evidence on damages was improper. We will affirm the judgment.

## BACKGROUND

Pinnacle, a gas utility regulated by statute,[1] planned to construct two new natural gas pipelines across a 61.92 acre tract in Leon County belonging to Raymond Read and Mark Read ("Appellees") and mortgaged to Thomas Fetzer, II. Pinnacle sought to condemn a fifty-foot-wide permanent easement along a centerline of approximately 1,242 feet. It also needed a temporary construction easement fifty feet on either side of the permanent easement. When Pinnacle and Appellees could not reach an agreement, in April 1997 Pinnacle filed a petition to condemn the property and establish the easements. *See* TEX. UTIL.CODE ANN. § 181.004 (Vernon 1998) (formerly codified as TEX.REV.CIV. STAT. ANN. art. 1436) (Vernon 1997); TEX. PROP. CODE. ANN. § 21.012 (Vernon 1984) (formerly codified as TEX.REV.CIV. STAT. ANN. art. 3264).

Three "Special Commissioners" were appointed to assess Appellees' damages. TEX. PROP.CODE. ANN. § 21.014 (Vernon 1984). A hearing was conducted by the commissioners, who afterward awarded Appellees $7,527 for the easements. *Id.* § 21.015 (Vernon 1984). In May 1997, Pinnacle deposited the $7,527 with the clerk of the court along with a bond in the same amount, and obtained a writ of possession for the easements. *Id.* § 21.021 (Vernon 1984). Pinnacle proceeded to lay the pipeline across Appellees' property. Pinnacle also filed an objection to the amount of damages and demanded its statutory right to a trial. *Id.* § 21.018 (Vernon 1984) ("the court shall cite the adverse party and try the case in the same manner as other civil causes").

Appellees filed an objection to the commissioners' award and also a motion to dismiss the proceeding. They sought damages that resulted from unauthorized possession, as well as attorney's fees and expenses. *Id.* §§ 21.019(c), 21.044. The basis for their motion was jurisdictional:

1. TEX. UTIL.CODE ANN. ch. 121 (Vernon 1998 & Supp.2002) (primarily formerly codified as TEX.REV.CIV. STAT. ANN. art. 6050 (Vernon 1962)).

the Order appointing the Special Commissioners was void.

Pinnacle had filed seven similar condemnation petitions with the district clerk in Leon County. *Id.* § 21.013(c) (Vernon Supp.2002). Following the statute, the clerk filed the eight petitions on a rotating basis in the three district courts in the county that the clerk served. *Id.* § 21.013(d) (Vernon Supp.2002). This proceeding and one other were filed in the 278th District Court, whose elected judge is Jerry A. Sandel. Three of the condemnation proceedings were filed in the 12th District Court, whose elected judge is William L. McAdams. The other three were filed in the 87th District Court, whose elected judge is Sam B. Bournias. Pinnacle then presented eight orders to Judge Bournias, who appointed the same individuals as the commissioners in each case. The Commissioners took the oath and gave notice of the hearing. *Id.* §§ 21.014–.016. Appellees appeared at the hearing before the Special Commissioners and presented evidence.

Appellees urged that appointment of Special Commissioners by a judge other than the regular elected judge of the court to which the proceeding was assigned effectively circumvented the requirement of section 21.013(d) that cases be assigned among the district courts on a rotating basis and violated section 21.014(a) which requires that the "judge of a court in which a condemnation petition is filed or to which an eminent domain case is assigned shall appoint three . . . special commissioners." *Id.* §§ 21.013(d), 21.014(a).

Judge Sandel heard the motion to dismiss in August 1999 and signed an Order dismissing the condemnation proceeding and ordering a trial to determine Appellees' damages, attorney's fees, costs, and expenses. *Id.* § 21.044. Pinnacle appealed, but we dismissed that appeal for want of jurisdiction.[2] Eventually, in April 2000 there was a jury trial. The jury awarded $63,462.50 in attorney's fees, $3,413.65 in expenses, $2,550.00 in physical damages to the property, and $34,872.42 in damages from loss of use of the property ("lost profits").[3]

Prior to the trial on damages, Pinnacle filed a new condemnation proceeding regarding the same property. The statutory procedure for appointing the commissioners was fully complied with. One day before trial, April 24, 2000, a new writ of possession was issued in the second condemnation proceeding. The parties agreed that the time period for damages in this trial was from the date of the first writ of possession to the date of the second.

## PLEA TO THE JURISDICTION AND MOTION TO DISMISS

 A threshold question is whether, for either of two reasons which are peculiar to this case, the second condemnation proceeding and writ of possession make Pinnacle's issue concerning the validity of Judge Sandel's order dismissing the cause an issue that we should not directly decide. First, we note that due to the second condemnation proceeding and writ of possession, the question of whether Pinnacle can acquire an easement for its pipeline in this case is moot. "Generally, an appeal is

**2.** The order appealed from was not a "final order" nor did it meet any statutory exception to the "final order" rule.

**3.** The judgment was in favor of Raymond Read and Mark Read. Lienholders are not

"property owners" entitled to damages under chapter 21. *State v. First Interstate Bank,* 880 S.W.2d 427 (Tex.App.-Austin 1994, writ denied).

moot when the court's action on the merits cannot affect the rights of the parties." *VE Corporation v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex.1993).

■ Second, by filing the second condemnation proceeding before the resolution of the first, Pinnacle has created a potential quagmire. If we were to reverse, there would then be two identical condemnation proceedings, two commissioners' awards, and two pending judicial trials on damages for a permanent taking, each with a different date by which to determine market value and other measures of damages.[4] We cannot predict the potential legal difficulties that might arise for Appellees from this situation in attempting to collect damages for harm associated with the period of time between the two writs. We are reminded of that principle of equity which is that equity will not suffer right to be without a remedy. *Baytown v. General Tel. Co.,* 256 S.W.2d 187, 190 (Tex.Civ.App.-Galveston 1953, writ ref'd n.r.e.); *cf. Ray v. Peters,* 422 S.W.2d 615, 616 (Tex.Civ.App.-Waco 1967, no writ.).

We conclude that based on mootness and equity, Pinnacle's issue on the dismissal should be overruled. Our decision is bolstered by the fact that to attempt to address the issue directly would raise concomitant matters which defy resolution under the current state of chapter twenty-one. Suffice it to say that by addressing the issue on jurisdiction, we cannot affect the second proceeding whereby Pinnacle has acquired an identical interest in Appellees' property.

The issue regarding dismissal is overruled.

---

4. We assume the parties filed objections to the commissioners' award in the second proceeding just as they did in the first.

## EVIDENCE OF LOST PROFITS AND THE JURY CHARGE

The jury awarded $34,872.42 in damages for loss of use of the property ("lost profits") during the stipulated time period. Appellees offered testimony that since 1996, Mike Read had been in conversations with Sanderson Farms about building broiler houses for chickens on the 61.92 acres in question. Read testified that due to the pipeline, the north end of the property, 17.5 acres, was unusable for this chicken farm. He said he could not simply build the chicken houses planned for the north end on other parts of the property because of position requirements and buffer zone regulations. Meanwhile, chicken houses were built on the rest of the property, and a contract with Sanderson Farms was signed. Based on his costs and profit on the other acreage, he projected he lost profits of $34,872.42 during the time in question.

Pinnacle argues that Appellees cannot recover for these lost profits; and if that is so, the trial court erred in admitting evidence about lost profits, and also erred in submitting the question about them to the jury. Finally, Pinnacle complains the court should have submitted its five requested jury instructions which defined and limited what evidence the jury could consider for lost profits.

### *Lost Profits*

■ Section 21.044, authorizing the trial court to award the condemnee "the damages that resulted from the temporary possession" of the property, does not define "damages." Pinnacle argues these damages are limited to the rental value or diminished rental value of the land during

the period of the temporary possession by the condemnor. We disagree.

The cases cited by Pinnacle are not on point. For example, in *Houston Lighting v. Klein Indep. Sch. D.*, the court held that punitive damages were not recoverable because a condemnation case is statutory and not the tort of "trespass." 739 S.W.2d 508, 519 (Tex.App.-Houston [14th Dist.] 1987, writ denied). The other cases Pinnacle cites either are not relevant to the present case, do not support Pinnacle's argument, or support Appellees' position.[5] Furthermore, when a condemnation is partial, damages include injuries which "relate[ ] to the property owner's ownership, **use**, or enjoyment of the" land. (Emphasis added). TEX. PROP.CODE ANN. § 21.042(d). We see no reason to limit the meaning of "damages" in section 21.044 to exclude "use" of the land, in light of the Legislature's definition in section 21.042(d).

In *Southwestern Bell Telephone Co. v. Gordon*, "impaired option marketability" was the measure of damages for wrongful temporary possession. 705 S.W.2d 767 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). Similarly, we find that damages under section 21.044 are not limited to the market or rental value of the property. Therefore, Appellees' recovery for lost profits was proper.[6]

Pinnacle also argues: "As a matter of law, lost profits cannot be recov-

ered from a non-existent business." But the two Supreme Court cases it cites do not support the argument. In *Holt Atherton Industries, Inc. v. Heine*, the Court said: "Recovery for lost profits does not require that the loss be susceptible of exact calculation.... The amount of the loss must be shown by competent evidence with reasonable certainty.... Opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.... It is not necessary to produce in court the documents supporting the opinions or estimates." 835 S.W.2d 80, 84 (Tex.1992). In *Texas Instruments v. Teletron Energy Mgt.*, the Court applied a "reasonable certainty" test, *i.e.*, the inquiry is whether the evidence shows "that a loss of profits is the natural and probable consequences of the act or omission complained of, and their amount is shown with sufficient certainty.... [I]t is sufficient that there be data from which [profits] may be ascertained with a reasonable degree of certainty and exactness." 877 S.W.2d 276, 279 (Tex.1994) (citing *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098–99 (1938)). We find that Read's testimony meets the requirements of *Heine* and *Texas Instruments*.

Appellees were entitled to recover for lost profits from the planned chicken farm. The trial court did not err in allowing

---

**5.** For example, some refer to situations in which there is a taking of an entire piece of property. In that instance, the market value of the property may be the appropriate measure of damages. Those cases are inapplicable here.

**6.** In so holding we disagree with *Ludewig v. Houston Pipeline Co.*, 773 S.W.2d 610, 613–14 (Tex.App.-Corpus Christi 1989, writ denied). There, the court held that if the condemnor deposits the damages set by the commissioners or posts a bond in lieu thereof, it has the right to condemn and possess the property,

even if later the condemnation and possession is found to be improper. Therefore, the court reasoned, under the express language of section 21.044(a), *i.e.*, that the court may award damages only if "a condemnor who has taken possession of property pending litigation did not have the right to condemn the property," recovery can not be had for loss of use of the land. However, we interpret "did not have the right to condemn the property" to refer to filing the petition and proceeding to possess or attempt to possess the land.

evidence about lost profits, and Pinnacle's complaints are overruled.

### Jury Charge Instructions

■ Pinnacle complains about six jury instructions it requested but which the trial court denied. One of these was based on its "lost profits" complaint which we have overruled. The remaining five had to do with admonitory instructions worded in various ways about the necessity of the evidence being based on reasonable probabilities and competent data rather than mere speculation.

"Either party may present to the court and request written ... instructions ...; and the court may give them or a part thereof, or may refuse to give them, as may be proper." TEX.R. CIV. P. 278. The court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." *Id.* 277. "The court shall submit the ... instructions ... which are raised by the written pleadings and the evidence." *Id.* 278.

■ However, "the trial court [has] considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury." *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997) (citing *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974)). Requested instructions "should be submitted only if they are of some aid or assistance to the jury in answering the submitted issues. . . . Unnecessary instructions should not be given, even if they are correct statements of law." *Raiford v. May Dept. Stores Co.,* 2 S.W.3d 527, 533 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Unnecessary instructions single out or highlight issues, and in so doing run the risk of being comments on the weight of the evidence. *See Acord v. General Motors Corp.,* 669 S.W.2d 111, 116 (Tex.1984).

We do not believe Pinnacle's requested instructions were necessary to the jury's understanding of the question it was asked. The charge on lost profits was:

Question No. 4: What sum of money, if any, do you find were the damages to the Reads that resulted from the loss of the use of their property by Pinnacle Gas Treating, Inc. temporarily occupying the pipeline easement?

Consider the following elements of damages, if any, and none other:

1. Loss of use of land for poultry houses or livestock grazing.

2. Loss of any profits from Defendants' business.

3. Loss of rental value.

4. Loss of crops or vegetation.

Pinnacle's requested instructions were legally correct and could have been given. However, we cannot say the trial court abused its discretion in refusing them.

■ Even if the instructions should have been given, refusing to do so was harmless, *i.e.,* it did not probably cause the rendition of an improper judgment. TEX. R.APP. P. 44.1(a); *Raiford,* 2 S.W.3d at 530. The elements of damages and the evidence thereon was such that the requested instructions were not necessary.

Pinnacle's charge issues are overruled.

### CONCLUSION

Having overruled Pinnacle's issues, we affirm the judgment.

Justice GRAY, dissenting.

TOM GRAY, Justice, dissenting.

This is a condemnation case. The broad issue the parties have presented is whether a duly elected district judge serving the county in which the case is filed can appoint condemnation commissioners, rather than only the judge that is elected to the

specific court to which the case is assigned. This issue requires a constitutional interpretation. A more narrow issue on which this case can be resolved is whether the appointment of condemnation commissioners by one elected judge for a case pending in another court is properly dismissed rather than simply proceeding to trial on the objections filed by the parties to the damages awarded by the appointed commissioners.

## BACKGROUND

In this case, Pinnacle sought to condemn an easement for a natural gas pipeline. The condemnation petition was filed with the district clerk who assigned it on a rotational basis to one of the district courts in Leon County. Pinnacle took the petition to the duly elected judge of one of the other district courts in Leon County, ostensibly upon the belief that any judge elected to any district court in Leon County could appoint the condemnation commissioners. Whereupon the judge, purporting to act as the judge of the court to which the case was assigned under the transfer of benches provisions of the constitution, statutes, rules, and local practice, appointed three condemnation commissioners to hear the matter for the purposes of determining damages. TEX. PROP.CODE ANN. § 21.014 (Vernon 1984).

The three commissioners noticed a hearing and, with all parties in attendance, proceeded to decide the issue of compensation due the landowners (Read). The commissioners duly made an award and returned it to the trial court. Pinnacle and Read filed an objection to the award.

Read filed a plea to the jurisdiction, arguing that the trial court did not have jurisdiction of the condemnation case because the commissioners were not lawfully appointed and therefore the condemnation proceeding was void. The landowners also sought damages for the wrongful entry upon their property under the writ of possession obtained by Pinnacle by paying the amount of the commissioner's award into the registry of the court. TEX. PROP.CODE ANN. § 21.021 (Vernon 1984).

The trial court granted the plea to the jurisdiction thereby dismissing the condemnation proceeding and tried the claim for damages. Pinnacle appeals.

## CONDEMNATION PROCEEDINGS

We are concerned with the protection of the landowner from having property taken for a public use without adequate compensation in violation of the Texas Constitution. TEX. CONST. art. I, § 17. The principle that I believe controls this case was first expressed by the Supreme Court of Texas in 1894. The landowner, which happened to be a railroad, claimed that the commissioners appointed were disqualified because they were not disinterested and therefore their appointment, and thus their award, was void. The Supreme Court held:

Under the law, the award could not be made the judgment of the court until after the expiration of 10 days from the time it was returned into court, and, during that time, plaintiff, by filing objections to it, would have been entitled to a trial de novo before a jury, by which objections it would have set aside the award, and thus have secured ample protection before the county court, with the right of appeal to the court of appeals if its rights were not fully protected by the judgment of the county court. Having failed to avail itself of so simple and effective a remedy, we see no reason why the rules of law by which such proceedings are held to be binding upon parties to them, when duly notified, should be departed from, and a collateral attack allowed to be made upon the

proceedings of a court of competent jurisdiction. There is no error in the judgment of the district court or the court of appeals, and the judgments of those courts are affirmed.

*Gulf, C. & S.F. Ry. Co. v. Ft. Worth & R.G. Ry. Co.*, 86 Tex. 537, 26 S.W. 54, 60 (1894).

*Gulf* addressed a collateral attack on the judgment arguing that it was void because the commissioners were disqualified. This is essentially the same as the attack by Read in this case. Read contends that because they were not lawfully appointed, the commissioners actions were void, and thus, Pinnacle's objection to the award did not vest the trial court with jurisdiction to hear the condemnation suit. The Supreme Court rejected the idea that the commissioners actions were void and held that the trial de novo before a jury, which thus prevented the award by these allegedly disqualified commissioners from being entered as the judgment of the court, secured ample protection for the landowner.

In 1935, the Supreme Court had the opportunity to reexamine the issue of the effect of the appointment of commissioners in violation of the condemnation statutes. The condemnation statutes, then as now, required the appointment of commissioners agreed upon by the parties. The county judge had failed to assign the commissioners agreed to by the parties. The Court held as follows:

> By cross-assignment defendant complains of the action of the county judge in appointing certain commissioners, after he and a representative of the railway company had agreed upon certain other parties to be appointed. If this was erroneous, we do not think it was sufficient to invalidate the whole proceeding, and as defendant has full opportunity to contest the award of the commissioners on the question of dam-

ages, we do not see how he can be injured.

*Fort Worth & D.N. Ry. Co. v. Johnson*, 125 Tex. 634, 84 S.W.2d 232, 234 (1935). Thus, again, the Supreme Court held that defects in the appointment of the commissioners did not invalidate the proceeding. The de novo appeal of the commissioner's award was considered the appropriate manner of correcting the defect, if any.

The Galveston Court of Civil Appeals ruled on a related issue in a direct appeal of a dismissal of an award because only two of the commissioners had attended the hearing. After an objection to the award was filed, the landowner requested that the trial court dismiss the condemnation proceeding. The trial court dismissed the case and the condemning authority appealed. The court held:

> Under the above authorities the judgment of the trial court dismissing this case must, we think, be reversed and the cause remanded to the County Court at Law of Harris County, with instruction to the Judge thereof to proceed to trial in the condemnation suits so consolidated.

*City of Houston v. Stovall*, 249 S.W.2d 246, 248 (Tex.Civ.App.-Galveston 1952, writ ref'd n.r.e.). These holdings are consistent with the Supreme Court's later holding that "The right of [de novo] appeal affords petitioner an adequate remedy for anything that may occur in the condemnation proceedings up to and including the award of the special commissioners." *Tonahill v. Gulf States Utilities Co.*, 446 S.W.2d 301, 302 (Tex.1969); *see also City of Bryan v. Moehlman*, 155 Tex. 45, 282 S.W.2d 687, 689 (1955) ("We therefore hold that the respondents had an adequate remedy at law [by de novo trial] in the county court and by appeal therefrom."); *Jefferson County Drainage Dist. No. 6 v. Gulf Oil Corp.*, 437 S.W.2d 415, 420 (Tex.Civ.App.-

Beaumont 1969, no writ) ("... having participated in the hearing [before the condemnation commissioners] and having appealed [for trial de novo] to the County Court at Law, all matters were properly before that court ...").

The cases of *Walling v. State,* 394 S.W.2d 38 (Tex.Civ.App.-Waco 1965, writ ref'd n.r.e.) and *Matador Pipelines, Inc. v. Watson,* 626 S.W.2d 139 (Tex.App.-Waco 1981, writ ref'd n.r.e.) are easily distinguishable. In both cases, two sets of three commissioners were appointed. In both cases it was the second set of commissioners that attempted to make the condemnation award. In both cases this court held that the second set of commissioners were nothing more than strangers to the proceeding and that their purported awards had no effect. In neither one of these two cases was the entire proceeding dismissed as argued for by Read. And in both cases the court expressed the opinion that it was proper to go forward in the pending condemnation proceeding. The underlying condemnation cases were not dismissed, therefore, it was unnecessary to file new condemnation proceedings as Read argues is required for a defect in the appointment process.

Accordingly, I would hold that by taking a de novo appeal to the district court by objecting to the condemnation commissioners' award, the parties were in the proper procedural posture to proceed to a jury trial on the issue of the fair market value of the property taken by Pinnacle for a natural gas pipeline easement across Read's property and damages to the remainder. Accordingly, the trial court erred in dismissing the condemnation suit and proceeding to a trial on the claim for damages for wrongful entry upon and possession of Read's property. Because the majority holds otherwise, I respectfully dissent.

## MOOTNESS AND EQUITY

To resolve Pinnacle's first issue the majority has focused on the procedural posture of the case, in particular the filing of a second condemnation proceeding to condemn the same property. Read filed a supplemental brief as a result of this Court's discovery during oral argument of the existence of the second proceeding. The supplemental brief regarding the effect of the second proceeding properly acknowledges the situation in which the parties find themselves and to which they have agreed. The brief contains the following passage:

> ... Although Pinnacle had previously taken possession of the condemned easement on May 21, 1997 pursuant to this cause of action, on April 24, 2000, Pinnacle filed its bond and received a writ of possession to occupy the same easement at issue in this cause pursuant to a second case in condemnation filed by it on March 27, 2000. (RR, v. 2, p. 91). The Condemnees could have objected to such filing and proceedings therein until all matters in this case were completed and, could have, in all probability, obtained an injunction against the prosecution of the second condemnation case pursuant to Section 65.011 of the Texas Civil Practice and Remedy [sic] Code and the holding in *Brazos River Conservation & Reclamation Dist. v. Allen,* [141 Tex. 208,] 171 S.W.2d 842 (Tex. 1943). However, they acquiesced in and agreed with Pinnacle to allow it to have possession of and occupy the easement as a result of the second condemnation case and the order of possession and writ granted therein. This understanding was fully stated to the trial court in chambers outside of the presence of the jury venire and was reiterated in the presentations and arguments made to the Trial Court on the Motions in Li-

mine. (RR, v. 2, p. 91). Pinnacle's counsel set forth part of the terms and benefits in *voir dire* (RR, v. 2, p. 51) and, counsel for Condemnees agreed, during the trial of the case, to not bring up the issue of whether Pinnacle was wrongfully occupying the easement in violation of a court order or whether Pinnacle was committing a continuous trespass. (RR, v. 2, p. 91). Thereafter, both parties agreed and the entire trial was based on the terms of this understanding. (RR, v. 3, pgs. 9, 13, 89 & 90 and v. 4 pgs. 6 & 7). Pinnacle's acquiescence and the benefits received by it under this agreement are obvious, (1) the Condemnees did not seek or obtain an injunction; (2) the damages for temporary possession were limited to a period terminating on April 25, 2000; (3) Pinnacle obtained legally enforceable possession and ceased to be subject to the Trial Court issuing a writ of possession to Condemnees thereby dispossessing Pinnacle at the time of judgment; (4) Pinnacle avoided having to file a supersedeas bond; and (5) Pinnacle avoided a trial where its continuous violations of the court's order were enumerated. The Condemnees agreed and acquiesced to the possession of the easement by Pinnacle on April 25, 2000, because (1) it set the lawful date of taking as April 25, 2000 and (2) the Condemnees ceased to have to incur and pay large bills for fees and expenses, which they could little afford. For Pinnacle to have acquiesced and accepted the benefits from such understanding and for it to now be permitted to disavow such agreement would be unconscionable.

\* \* \*

This narrows the issues before this Court on appeal to solely: (1) did the trial court properly dismiss this cause of action because of lack of jurisdiction; (2) were the damages awarded by the jury properly recoverable under Section 21.044 of the Texas Property Code; and (3) did the trial court abuse its discretion in admitting the Read's testimony and denying additional instructions to the jury?

All parties having agreed to the effect of having filed the second proceeding, and there being an issue of law properly presented to this court in this appeal, the resolution of which can and will impact the parties, it can hardly be said that the issue presented of the propriety of the trial court dismissing the condemnation proceeding is moot. Further, the parties have resolved the effect of the second proceeding on this one. Therefore, equity requires that we allow the parties to enjoy the benefits of their agreement, even if there may be some unforseen or unintended consequences. There is no insurmountable legal obstacle imposed by the existence of the second proceeding. I have no doubt that the trial court and the parties, upon issuance of our opinion, would be able to appropriately resolve any issues that may arise.

## CONCLUSION

For the reasons stated, I would reverse the trial court's judgment dismissing the condemnation proceedings, awarding damages on the dismissal of the condemnation petition, and for wrongful possession.