David DRICHAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00002–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 27, 2004.

Decided Nov. 9, 2004.

Troy Hornsby, Miller, James, Miller and Hornsby, LLP, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

David Drichas was convicted by a jury for evading detention with a motor vehicle. *See* TEX. PEN.CODE ANN. § 38.04(a), (b)(1) (Vernon 2003). The jury also found that, during the commission of the offense, Drichas used his truck as a deadly weapon. *See* TEX. PEN.CODE ANN. § 12.35(c)(1) (Vernon 2003). Drichas pled true to allegations in the indictment under the habitual felony offenders statute, and the jury assessed his punishment at ninety-nine years' imprisonment. *See* TEX. PEN.CODE ANN. § 12.42(d) (Vernon Supp.2004–2005). The trial court sentenced Drichas in accordance with the jury's verdict. Drichas appeals, contending the State failed to provide him adequate notice of its intent to seek an affirmative deadly weapon finding, complaining of the trial court's refusal to further define the term "deadly weapon" in its charge to the jury, and challenging the legal and factual sufficiency of the evidence to sustain the jury's affirmative deadly weapon finding.

## I. *Factual and Procedural History*

The State's evidence showed that, in the early morning hours of March 21, 2003, Drichas hastily exited a gasoline station parking lot in Texarkana, Arkansas, causing the tires on his 1992 Chevrolet pickup truck to spin. He did this directly in front of an unmarked police vehicle driven by Officer Dwight Mowery of the Texarkana, Arkansas, Police Department. Mowery was forced to brake "pretty hard" in order to avoid hitting Drichas' truck. Mowery made a quick check to see if there had been a crime committed at the gasoline station—there had not—and then initiated pursuit of Drichas' truck.

Mowery pursued Drichas for a few blocks before activating the flashing lights located in the grill of his car. Drichas continued to drive at excessive speeds, swerving and "fishtailing" around corners. When he crossed the state line into Texarkana, Texas, Officer Jason Woolridge, of the Texarkana, Texas, Police Department, took over what would become a fifteen-mile pursuit of the truck.

After speeding, weaving in and out of lanes, skidding around corners, disregarding traffic signals, and going the wrong way in a construction zone, Drichas led officers south of downtown on Highway 59, where he continued past Lake Wright Patman. Drichas' truck began to smoke and spew oil. After crossing the Sulphur River bridge, Drichas turned his truck around and began to travel back toward town. He then turned into a mobile home park, where he exited his still-moving truck and ran into some woods nearby. The truck collided with a parked van, causing the van to collide with a mobile home. Drichas was apprehended after a short pursuit through the woods.

Drichas was indicted for the offense of evading detention with a motor vehicle. Approximately two months before trial, the State moved to amend the indictment to include an allegation that Drichas used a deadly weapon, his truck, in committing evasion of detention as charged. The trial court granted that motion, and the amended indictment was filed October 17, 2003.

Trial was held December 9, 2003. At the close of the State's evidence, Drichas moved to dismiss the deadly weapon portion of the indictment. The motion was overruled, and Drichas then presented no evidence. The jury returned its verdict, finding Drichas guilty of evading detention with a vehicle and further found that, in doing so, he used his truck as a deadly weapon.

## II. *Notice of Intent to Pursue a Deadly Weapon Finding*

■ In his first point of error, Drichas relies on Article I, Section 19 of the Texas Constitution and contends the State failed to provide him with adequate notice of its intent to seek a deadly weapon finding at trial. Based on the original clerk's record filed in this Court, it appeared Drichas was correct. The trial court's order, in that record, granting the State's motion to amend the indictment referenced an attached copy of the amended indictment. That attached copy, however, contained only one of the two pages of the amended indictment and that page contained no allegation concerning a deadly weapon. Thus, it appeared the State gave no notice of its intent to pursue a deadly weapon finding. At oral argument, however, Drichas' counsel conceded that the filing of a supplemental clerk's record, including a complete copy of the amended indictment, remedied the notice complaint. This point of error is therefore overruled.

## III. *Proposed Jury Instruction*

Drichas, by his fourth point of error, complains of the trial court's denial of a

requested instruction to the jury. The court's charge to the jury included the following definition:

> A "deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

The charge then defined "serious bodily injury," "bodily injury," and "use."

■ Drichas requested that the court add this caveat to the definition given of a deadly weapon: "[T]he possibility of serious bodily injury or death must be more than merely hypothetical." The trial court denied this request.

### A. Standard of Review

Relying on the legislative intent of Article 36.19 of the Code of Criminal Procedure, the Texas Court of Criminal Appeals has outlined the appropriate method for analyzing errors in jury charges. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994). First, the reviewing court must determine whether the jury charge contains error. *Mann*, 964 S.W.2d at 641; *Abdnor*, 871 S.W.2d at 731–32. Second, the court must determine whether sufficient harm resulted from the error to require reversal. *Mann*, 964 S.W.2d at 641; *Abdnor*, 871 S.W.2d at 731–32.

### B. Contents of the Jury Charge: Statutory Definition

■ A trial court must charge the jury on the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004–2005). Such duty requires that the trial court instruct the jury on each element of the offense charged. *Murphy v. State*, 44 S.W.3d 656, 661 (Tex.App.-Austin 2001, no pet.). Also, the trial court must provide the jury with each statutory definition that affects the meaning of an element of the offense. *Id.*

■ If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Moore v. State*, 82 S.W.3d 399, 408 (Tex. App.-Austin 2002, pet. ref'd). We are, as is any other court, without the power to legislate and read into the statute something omitted by the Legislature by adding to the jury instruction words or standards not expressed in the statute. *Barkley v. State*, 152 Tex.Crim. 376, 214 S.W.2d 287, 291–92 (1948) (op. on reh'g); *Murphy*, 44 S.W.3d at 664. Therefore, we must presume the jury knew and applied the common and ordinary meaning to the words included in the jury charge. *See Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim. App.1996).

### C. Trial Court Properly Refused Proposed Instruction

■ Essentially, Drichas' contention is the jury charge should have included words reflecting the standard of review to be applied when examining the sufficiency of the evidence to support a deadly weapon finding. Merely because his proposed instruction is a correct statement of that standard is not an adequate reason for including it in the court's charge to the jury. Unnecessary instructions should not be given, even if they are correct statements of law. *See Pinnacle Gas Treating, Inc. v. Read*, 69 S.W.3d 240, 246 (Tex.App.-Waco 2002), *rev'd & remanded on other grounds*, 104 S.W.3d 544 (Tex.2003), *quoting Raiford v. May Dep't Stores Co.*, 2 S.W.3d 527, 533 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Unnecessary instructions single out or highlight issues, and in so doing run the risk of being comments on the weight of the evidence. *Pinnacle Gas Treating, Inc.*, 69 S.W.3d at 246.

Here, the trial court properly included the statutory definition of "deadly weapon." Based on the foregoing rules and limitations, we conclude the trial court did not err in refusing to include additional language describing the term "deadly weapon." We overrule Drichas' contention.

### IV. *Legal and Factual Sufficiency of the Evidence*

Drichas also challenges the legal and factual sufficiency of the evidence to support the jury's finding that he used his truck as a deadly weapon in the commission of the offense. Specifically, he argues the State failed to prove his driving placed someone else in danger of serious bodily injury or death.

#### A. Standards of Review

■ For legal sufficiency purposes, the question for the reviewing court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime (or finding) beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000). Specifically, we review the record to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt the truck was used as a deadly weapon. *See Cates v. State*, 102 S.W.3d 735, 738 (Tex.Crim.App. 2003).

■ When reviewing a challenge to the factual sufficiency of the evidence to support the jury's finding, the court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in its finding beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477 (Tex.Crim.App.2004). There are two ways in which the court may find the evidence to be factually insufficient. First, if the evidence supporting the finding, considered alone, is too weak to support the jury's finding beyond a reasonable doubt, then the court must find the evidence insufficient. *Id.* Second, if—when the court weighs the evidence supporting and contravening the finding—it concludes that the contrary evidence is strong enough that the state could not have met its burden of proof, the court must find the evidence insufficient. *Id.* "Stated another way, evidence supporting [the finding] can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." *Id.*

#### B. A Vehicle as a Deadly Weapon

■ The Penal Code defines the term "deadly weapon":

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon Supp.2004–2005). Section 1.07's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *McCain*, 22 S.W.3d at 503. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force. *Id.; Tisdale v. State*, 686 S.W.2d 110, 114–15 (Tex.Crim. App.1984) (op. on reh'g). If driven so as to endanger lives, a motor vehicle can clearly be a deadly weapon. *Cates*, 102

S.W.3d at 738; *Tyra v. State*, 897 S.W.2d 796, 798–99 (Tex.Crim.App.1995); *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim.App.1992).

 To sustain a deadly weapon finding, there must be evidence that others were actually endangered, *"not merely a hypothetical potential for danger if others had been present."* *Mann v. State*, 13 S.W.3d 89, 92 (Tex.App.-Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex.Crim.App.2001) (emphasis added). While a deadly weapon finding does not require that the object actually cause death or serious bodily injury, it does require that the object have more than a hypothetical capability of causing death or serious bodily injury. *Johnston v. State*, 115 S.W.3d 761, 764 (Tex.App.-Austin 2003, pet. ref'd). We must evaluate the "capability" of causing death or serious bodily injury in light of the facts that actually existed while the charged offense was committed, rather than conjecture about what might have happened if the facts had been somewhat different. *Williams v. State*, 946 S.W.2d 432, 435 (Tex.App.-Fort Worth 1997), *rev'd in part on other grounds*, 970 S.W.2d 566 (Tex.Crim.App.1998) (concluding that proper remedy when appellate court sustains challenge to sufficiency of evidence to support deadly weapon finding is ordering deletion of deadly weapon finding rather than ordering new trial on punishment).

C. Relevant Cases

In *Williams*, the state presented evidence Williams possessed the truck and also used the truck during his commission of the felony offense of driving while intoxicated (DWI). By doing that, he both used and actively employed the truck while committing the DWI felony. *Id.* at 435. However, there was no evidence that any other person encountered danger from Williams' truck:

> [T]here is no evidence that any other motorist was on the highway at the time and place that Williams drove in an intoxicated condition or that any other motorist (besides other troopers the arresting officer called for assistance)[1] ever came upon the scene or encountered danger from Williams' truck or from other traffic because the truck was parked in the highway.

*Id.* at 435–36. Therefore, the Fort Worth Court of Appeals concluded, the state failed to prove that, in the manner of its use, or intended use, Williams' truck was capable of causing death or serious bodily injury. Accordingly, there should not have been a deadly weapon issue in the jury charge on punishment. *Id.* at 436.

In *Davis v. State*, 964 S.W.2d 352, 354 (Tex.App.-Fort Worth 1998, no pet.), the Fort Worth Court of Appeals factually distinguished its earlier opinion in *Williams* by pointing to the testimony of the arresting officer that Davis weaved and drove into the oncoming lane of traffic four or five times, and had to take "evasive action" to avoid hitting another car in the oncoming lane.

In another case, one also involving charges of felony DWI, the testimony

---

1. It is difficult to ascertain the precise meaning of this parenthetical in *Williams*. This language may be read to exclude the officers in pursuit from the category of people who could be said to have been endangered by a defendant's driving. It is unclear whether the clause is intended to specify that the officers were present, just not endangered, or whether it does intend to exclude officers from those whom the defendant might endanger. We will not read *Williams* as excluding officers from the class of persons capable of being endangered. No other Texas court has cited *Williams* for such an exclusion. If *Williams* does, in fact, express the position that the state must show someone other than police officers were endangered, we emphatically disagree with such a position.

showed that the appellant, Mann, "almost hit another vehicle head-on" when Mann's vehicle crossed the centerline, and that a collision did not occur only because the oncoming vehicle "took evasive action." *Mann,* 13 S.W.3d at 92. Additionally, an officer experienced in reconstructing accidents testified a collision under those circumstances was capable of causing death or serious bodily injury. *Id.* The Austin Court of Appeals held there was sufficient evidence to support the finding that Mann used his vehicle in a manner capable of causing serious bodily injury or death during the commission of the felony DWI offense. *Id.*

D. Evidence was not Legally and Factually Sufficient to Show Actual Endangerment

 While the record in the instant case contains ample evidence that Drichas drove in a reckless manner, we do not find evidence that, during the fifteen-mile chase, Drichas' driving actually placed another person in danger. Based on *Williams* and *Mann,* evidence that an accused drove recklessly is insufficient to meet the state's burden of showing that he or she used a vehicle as a deadly weapon during the commission of the offense charged.

1. *Evidence Shows Hypothetical Danger, not Actual Endangerment*

Mowery, the officer who initiated the chase on the Arkansas side of Texarkana, testified Drichas nearly caused an accident when Drichas first pulled out of the gasoline station parking lot in a reckless manner:

So when the defendant pulled out in front of me, it was a quick thing where I could barely see him. I had to hit my brakes pretty hard to prevent from having an accident.

We first note this incident occurred, as Mowery conceded, before the commission of the alleged offense:

Q .... did you almost running into the defendant's truck have anything to do with him running, evading Texarkana, Texas police officers for fifteen miles?

A. No.

Q. Does it have anything to do with—Does what didn't happen at the store, does that have anything to do with the defendant evading police in a vehicle?

A. No.

Therefore, we cannot say this near mishap between Mowery and Drichas qualifies as use of a deadly weapon *during the commission of the offense charged.*[2]

Mowery testified to the reckless manner in which Drichas drove during the fifteen-mile chase, describing how Drichas failed to stop at stop signs, turned in a way that caused him to temporarily lose traction on the back end of his truck and nearly ended up on the steps of the Bi–State Justice Building, and how he traveled up to seventy miles per hour through downtown streets. Mowery stated that, while "there wasn't a lot" of traffic out at the time of the chase, there was some. Mowery described how Drichas continued to drive at excessive rates of speed in the wrong direction in the construction zone around Highway 59. After Drichas had driven on Highway 59 past the lake, he turned

---

2. Even if this incident had occurred during the actual evasion, the State would still have jurisdictional problems to overcome since the incident would have occurred in the State of Arkansas. Texas has territorial jurisdiction

over an offense if either the conduct or a result that is an element of the offense occurs inside this state. TEX. PEN.CODE ANN. § 1.04(a)(1) (Vernon 2003); *Rodriguez v. State,* 146 S.W.3d 674, (Tex.Crim.App., 2004).

around past the Sulphur River bridge and headed back in the direction of the several police units following him.

While evidence of the reckless maneuvers Drichas made during the chase are relevant to the issue of whether he drove his truck in a manner sufficient to render it a deadly weapon, based on the reasoning in *Williams* and *Mann*, such evidence, alone, is insufficient. While it might be said that Drichas' driving potentially placed the officers at risk of danger, there is no evidence the officers ever had to take evasive action or were placed in the zone of danger during the course of the evasion. Put another way, there is no evidence the officers or any other person were *actually endangered*. *See Williams*, 946 S.W.2d at 435–36. The following testimony by Mowery illustrates the failure of the State's evidence:

Q. Was there a lot of traffic out?

A. No, there wasn't a lot. There was some.

Q. Now, during the course of this route that you took, did you at any time see the truck attempt to run over anybody?

A. No.

Q. Did you see anybody having to swerve to get out of the way or move rapidly to get out of the way of this truck?

A. Other than me there at the store. No, I didn't see anything, other than me, having to avoid an accident.

Q. Did you see the driver in any way point the truck towards someone or some vehicle in an attempt to run them down or harm them in any way?

A. No. I did observe the defendant driving the wrong way on the highway, though.

Q. I understand, but my question was he didn't point his vehicle at any person or any other vehicle in an attempt to run them down.

A. Well, it was certainly pointed in the wrong direction at that point. I'm not certain of this, but we were meeting some traffic somewhere around that point there.

Q. You never saw anybody have to swerve to get out of his way?

A. No.

We find evidence of reckless driving, but find no evidence this reckless driving actually endangered another person.

There is also testimony that Drichas "blew past" a Texas officer stationed at an intersection. This evidence, too, fails to reach the level of endangerment necessary to show the truck was a deadly weapon in that it does not reveal that the officer was endangered by Drichas' driving. In fact, the evidence illustrates that the officer was waiting at the intersection to join the chase and that his position was safely outside Drichas' route. On cross-examination, Mowery made clear that, as Drichas sped down Fourth Street, the waiting officer "was not on Fourth Street" and the officer "didn't have the road blocked" or "any portion of [Fourth Street] blocked."

When Drichas turned around past the Sulphur River bridge, and the officers also turned around to continue the chase, Drichas' truck was smoking and a fine mist of oil was being emitted from it and hitting the windshields of the officers' vehicles. Again, however, this evidence is mentioned only briefly and only incidentally, and no description of any dangerous effects of the oil were ever elicited.

We also examined the testimony regarding Drichas' entry into the mobile home park and his subsequent abandonment of his moving truck. We note the truck continued to move forward and hit a van, pushing the van into a mobile home.

However, there is no showing that a person or persons were in either the van or the mobile home. Further, there is no evidence there was anyone in the mobile home park itself during the time the collision occurred. To assume otherwise would require us to engage in conjecture, which we cannot do.

The State is correct that the officers testified to conclusions consistent with the language in the statutory definition of "deadly weapon":

> Q. . . . And Officer Mowery, you've talked about excessive rates of speed, you've talked about running stop signs, driving on the wrong side of the road the defendant did that night, in your training and experience, the manner the vehicle was used that night, was it capable of causing serious bodily injury or death?
>
> A. Yes, absolutely so.
>
> . . . .
>
> Q. During this car chase, we've talked about the excessive rates of speed and the defendant driving on the wrong side of the road and weaving, that early morning, in the manner of its use or intended use, was that vehicle capable of causing serious bodily injury or death?
>
> A. Yes, ma'am.

These conclusory assertions mirroring the statutory language simply do not provide sufficient evidence of the actual endangerment. The state need not show that someone was actually killed or seriously injured; it need only show that another person was actually put in danger of serious bodily injury or death. No such evidence was adduced in this case.

Even viewing this evidence in a light most favorable to the jury's verdict, we cannot say that a rational trier of fact could conclude Drichas placed others in danger of serious bodily injury or death.

Further, viewing the evidence in a neutral light, we cannot conclude that the jury was rationally justified in finding beyond a reasonable doubt Drichas used his truck as a deadly weapon since there is no evidence to show that another person was actually endangered by Drichas' use of his truck. We sustain Drichas' third and fourth points of error.

*2. Deletion of Deadly Weapon and Remand for New Trial on Punishment*

■ We note that the Texas Court of Criminal Appeals has concluded that the proper remedy when the state fails to sufficiently show that a defendant used a deadly weapon during the commission of an offense is for the reviewing court to delete the affirmative deadly weapon finding. *Williams,* 970 S.W.2d at 566; *Narron v. State,* 835 S.W.2d 642, 644 (Tex. Crim.App.1992). Here, however, because deletion of the deadly weapon finding changes the range of punishment available to be assessed against Drichas, we must remand the case for a new trial on punishment. *See* Tex.R.App. P. 43.3.

Evading detention is a Class B misdemeanor. Tex. Pen.Code Ann. § 38.04 (Vernon 2003). When a person evades detention with a motor vehicle, however, the offense becomes a state jail felony. Tex. Pen.Code Ann. § 38.04(b)(1). With an affirmative deadly weapon finding, the state jail felony of evasion of detention with a motor vehicle becomes a third degree felony. *See* Tex. Pen.Code Ann. § 12.35(c) (Vernon 2003). Finally, enhancing this third degree felony under the habitual felony offenders statute with two prior felony convictions, the punishment range then becomes from twenty-five to ninety-nine years or life in prison. *See* Tex. Pen.Code Ann. § 12.42(d). Removal of the deadly weapon finding, however, also removes one of the enhancements necessary to make

evasion of detention punishable by ninety-nine years.

The State did, of course, show that Drichas used a motor vehicle in evading detention, making the offense a state jail felony. *See* TEX. PEN.CODE ANN. § 12.35(a), (b). However, because the State failed in showing that Drichas used that motor vehicle as a deadly weapon, his offense should have been deemed a state jail felony, rather than a third degree felony under Section 12.35(c)(1).[3] The punishment available for a state jail felony, enhanced with two prior felony convictions pursuant to Section 12.42(a)(2), is that for a second degree felony: two to twenty years in prison and a fine of up to $10,000.00. *See* TEX. PEN.CODE ANN. § 12.42(a)(2) (Vernon Supp.2004–2005), § 12.33 (Vernon 2003). Therefore, without the deadly weapon finding, but considering the two prior felony convictions alleged under the habitual felony offenders statute—which Drichas admitted were true—the maximum punishment for this conviction is twenty years and a $10,000.00 fine. Without the deadly weapon finding, the ninety-nine-year sentence imposed is well outside that maximum.

We delete the deadly weapon finding and remand this case to the trial court for a new trial on punishment wherein Drichas' punishment must be assessed pursuant to Sections 12.33 and 12.42(a)(2) of the Texas Penal Code.

---

3. TEX. PEN.CODE ANN. § 12.35(c)(2) also allows the state to enhance punishment to a third degree felony if it alleges and proves a prior felony conviction for specific types of offenses. Here, the indictment clearly relied solely on the deadly weapon allegation for enhancement under this statute and clearly alleged two prior felony convictions, neither of which was the type of prior felony offense required under Section 12.35(c)(2), solely for enhancement under Section 12.42, the habitual felony offenders statute.