In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-04-00002-CR


______________________________




DAVID DRICHAS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 02-F-0711-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 The Texas Court of Criminal Appeals has remanded this appeal to our Court for
reconsideration of the sufficiency of the evidence to support the conviction of David Drichas. As
we have set out in our previous opinions, Drichas was convicted by a jury for evading detention with
a motor vehicle, and there was a finding that the vehicle was used as a deadly weapon. In our first
opinion, we found the evidence both legally and factually insufficient to support the deadly weapon
finding. The Texas Court of Criminal Appeals concluded there was some evidence and remanded
to us for another factual sufficiency review. After a second full analysis of the evidence, citing to
what at that time was the Texas Court of Criminal Appeals' most recent pronouncement on that topic
(Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)), we again found the evidence factually
insufficient and remanded for a new trial on the deadly weapon finding. Drichas v. State, 187
S.W.3d 161 (Tex. App.--Texarkana 2006), vacated, No. PD-0381-06, 2006 Tex. Crim. App. LEXIS
2448 (Tex. Crim. App. Dec. 20, 2006).

Everything Old Is New Again

 Since our last opinion in January 2006, the Texas Court of Criminal Appeals released its
opinion in Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006), in which it stated that its
explanation in Zuniga concerning how factual sufficiency review was to be conducted was in one
particular respect misleading and incorrect. 

 In Zuniga, the Texas Court of Criminal Appeals had stated, "[t]here is only one question to
be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was
a jury rationally justified in finding guilt beyond a reasonable doubt?" 144 S.W.3d at 484 (Tex. Crim.
App. 2004), overruled in part by Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). 
Zuniga then proceeded to rearticulate the factual sufficiency standard of review in terms more
specific to the burden of proof required in criminal cases. See Zuniga, 144 S.W.3d at 484.

 In Watson, the Texas Court of Criminal Appeals explicitly overruled Zuniga to the extent that
it allowed reversal of a jury's verdict when the "greater weight and preponderance of the evidence
actually favors conviction!" Watson, 204 S.W.3d at 417. The court criticized the standards
announced in Zuniga as allowing an appellate court to reverse a conviction when it simply disagrees
with the jury's verdict. Id. at 416. "That an appellate court would have acquitted a defendant on the
same facts that convinced a rational jury to convict has not ever, by itself, met [the court's] criteria
of a 'manifest injustice.'" Id. 

 The Watson court then reaffirmed Clewis (1) and its progeny by noting that the court has
"always held that an appellate court must first be able to say, with some objective basis in the record,
that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the
jury's verdict before [the appellate court] is justified in exercising its appellate fact jurisdiction to
order a new trial." Id. at 417. 

In the End, There Can Be Only One

 The court stated that the underlying ground rules for review were well articulated in Cain v.
State, 958 S.W.2d 404 (Tex. Crim. App. 1997). Watson, 204 S.W.3d at 414. We must remember
that a jury has passed on the facts and convicted, and must not order a new trial simply because we
disagree with the verdict, but only where a manifest injustice has occurred (though supported by
legally sufficient evidence). We must explain exactly how the evidence is too weak to withstand
scrutiny, or in which way the conflicting evidence greatly preponderates against conviction, and we
must view all the evidence in a neutral light in reaching that conclusion.

 The court went on to explain what those terms did not mean: they obviously do not allow
reversal simply because a judge would have chosen to acquit had he or she been on the jury. Id. at
416. 

 Thus, under Watson (and its approval of the earlier analysis utilized in Clewis, Cain, and their
progeny), we are to view all the evidence in a neutral light and determine whether the evidence
supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or
whether the great weight and preponderance of the evidence is contrary to the verdict, and if we
reverse, we must explain in detail how the evidence is lacking or how the contrary evidence so
greatly preponderates against conviction. Watson, 204 S.W.3d at 417; see also Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain, 958 S.W.2d 404; Clewis, 922 S.W.2d at 134. 

 We now turn to an application of those standards. Drichas was convicted by a jury for
evading detention with a motor vehicle. See Tex. Penal Code Ann. § 38.04(a), (b)(1) (Vernon
2003). The jury also found that, during the commission of the offense, Drichas used his vehicle as
a deadly weapon. See Tex. Penal Code Ann. § 12.35(c)(1) (Vernon 2003). Drichas pled true to
allegations in the indictment under the habitual felony offenders statute, and the jury assessed his
punishment at ninety-nine years' imprisonment. See Tex. Penal Code Ann. § 12.42(d) (Vernon
Supp. 2006). The trial court sentenced Drichas in accordance with the jury's verdict. Drichas
appealed, contending, among other things, that the evidence supporting the jury's affirmative deadly
weapon finding was legally and factually insufficient. 

 In our original opinion, Drichas v. State, 152 S.W.3d 630 (Tex. App.--Texarkana 2004),
rev'd, 175 S.W.3d 795 (Tex. Crim. App. 2005), we conducted the requisite review of all the
evidence, with specific reference to and application of that evidence required by a sufficiency review. 
After detailing the evidence and applying the sufficiency review, we concluded the evidence
presented by the State was both legally and factually insufficient to support the deadly weapon
finding. Accordingly, we deleted the finding, and because the ninety-nine-year sentence imposed
was well above the twenty-year maximum for the offense without the finding, we remanded for a
new trial on punishment only.

 The Texas Court of Criminal Appeals concluded there was some evidence that the vehicle
was a deadly weapon. The court reversed that portion of our opinion and remanded to this Court "for
a factual-sufficiency analysis consistent with [its] opinion." 

 In its own analysis, the Court held that:

 While the court of appeals is correct in noting that the danger posed to motorists must
be actual, and not simply hypothetical, the statute itself does not require pursuing
police officers or other motorists to be in a zone of danger, take evasive action, or
require appellant to intentionally strike another vehicle to justify a deadly weapon
finding. The volume of traffic on the road is relevant only if no traffic exists. 
Williams, 946 S.W.2d at 435-36. (2) The plain language of the statute indicates that a
deadly weapon finding will be sustained if the definition of a deadly weapon is met. 
Capability is evaluated based on the circumstances that existed at the time of the
offense. Williams, 946 S.W.2d at 435. The statute specifically pertains to motor
vehicles, so a deadly weapon finding is appropriate on a sufficient showing of actual
danger, such as evidence that another motorist was on the highway at the same time
and place as the defendant when the defendant drove in a dangerous manner. Mann,
13 S.W.3d at 92. We do not suggest that a defendant should be charged with using
a vehicle as a deadly weapon every time the offense of evading arrest or detention is
committed. The determination to seek a deadly weapon finding in those
circumstances is a fact-specific inquiry, and the facts will not always support such a
finding.

Drichas, 175 S.W.3d at 799 (footnote added).

 Thus, the court stated that, although the danger to some other motorist must be actual (not
just hypothetical), some unspecified degree of proximity is necessary to show that actual danger
existed, even though no person was actually endangered. See id. As more clearly indicated in its
opinion, the court was not suggesting that the mere existence of some other motorist somewhere on
the roadway is sufficient to provide the necessary showing that the defendant's use of the vehicle
placed that person in actual danger. See id. To so construe the court's opinion would eviscerate the
requirement that an actual, rather than hypothetical, person be endangered by the way in which the
vehicle was used.

 We have reviewed the record, as specifically directed, for "evidence that another motorist was
on the highway at the same time and place as the defendant when the defendant drove in a dangerous
manner." Id. (3) Although there is no concrete evidence to that effect, there are two statements from
Texarkana, Arkansas, police officer Lieutenant Dwight Mowery that touch on this issue. The
following exchange contains these two statements and the context in which the statements were
made:

 Q. Was there a lot of traffic out?


 A. No, there wasn't a lot. There was some.


 Q. Now, during the course of this route that you took, did you at any time
see the truck attempt to run over anybody?


 A. No.


 Q. Did you see anybody having to swerve to get out of the way or move
rapidly to get out of the way of this truck?


 A. Other than me there at the store. No, I didn't see anything, other than
me, having to avoid an accident. (4)


 Q. Did you see the driver in any way point the truck towards someone or
some vehicle in an attempt to run them down or harm them in any way?


 A. No. I did observe the defendant driving the wrong way on the
highway, though.


 Q. I understand, but my question was he didn't point his vehicle at any
person or any other vehicle in an attempt to run them down.


 A. Well, it was certainly pointed in the wrong direction at that point. I'm
not certain of this, but we were meeting some traffic somewhere around that point
there.


 Q. You never saw anybody have to swerve to get out of his way?


 A. No.


(Emphasis and footnote added.)

 Considering only the evidence supporting the affirmative deadly weapon finding, we
conclude the evidence is factually insufficient. As Mowery clearly concedes in the second italicized
statement, he is uncertain even about the presence of other motorists. Second, from his statements,
one cannot determine where or when the "traffic" was encountered, or even if it was on the same
roadway or on a nearby road. Thus, one can neither ascertain directly, or by inference, proximity of
the "traffic," either in time or space to Drichas' vehicle. 

 The Texas Court of Criminal Appeals' opinion directs us to examine the record for evidence
that there were other motorists present at the "same time and place" as the reckless driving occurred. 
With the exception of the pursuing officers, that evidence simply does not exist in this record. (5) 
While it is likely that, somewhere in Texarkana, there were other motorists on the roadways in those
early morning hours, the record before us does not demonstrate in a factually sufficient manner that
Drichas and the pursuing officers ever encountered any motorist in such a way as to place another
in actual danger. The evidence that there may have been some unknown quantity of traffic at some
unknown point, at some unknown time, is conjecture and is inadequate to support the jury's finding. 
The evidence in this case, as a whole, is so bound by internal qualifications that no reasonable juror
could infer that Drichas ever encountered any other motorist in such a way as to place that motorist
in actual danger because of the way Drichas was operating his vehicle. We must, therefore, conclude
that the evidence is too weak to support the jury's finding.

 We continue our review of the record to determine whether the verdict was reached against
the great weight and preponderance of the evidence. We look to the testimony of Texarkana, Texas,
police officer Jason Woolridge, who took over the primary pursuit when Drichas entered Texas. In
the following excerpt, he describes what he saw when first encountering Drichas and Mowery as they
drove into Texas:

 Q. . . . When you -- The place that you were at, were you blocking the
intersection in any way?


 A. No, ma'am.


 Q. You were actually kind of like off the side of the road?


 A. I was in the far southbound lane.


 Q. There -- And I believe you said that the only vehicle that you saw
besides the truck was Lieutenant Mowery's?


 A. Yes, ma'am.


Woolridge also explains that he did not see any other vehicles until the other police units caught up
with him at the point when Drichas turned his vehicle around, several miles after Woolridge took
over and near the end of the pursuit:

 Q. And you did not see any other cars whatsoever until you got pretty
close up to the turnaround there at the Sulphur River bridge? (6)


 A. Yes, ma'am. [Apparently affirming that he saw no other cars.]


 Q. So it was just the two of you.


 A. That I could see.


(Footnote added.)

 When measuring Mowery's general, uncertain statements, that there may have been some
traffic at some point, against the evidence to the contrary, we conclude that the contrary evidence is
so strong that it greatly preponderates against the deadly weapon finding. See Watson, 204 S.W.3d
at 414. Woolridge clearly states that he saw no other vehicles at the time he took over the chase into
Texas and that he saw no other vehicles until the other units caught up with him near the end of the
pursuit. (7) 

 In light of the higher court's opinion, we note that we do not base this conclusion on the
quantity of traffic that may or may not have been encountered. Nor do we measure the probability
that another motorist who was present was endangered by Drichas. Rather, we measure solely the
sufficiency of the evidence that there was another motorist present on the roadway "at the same place
and time" as Drichas when he drove in a reckless manner. Again, the two statements by Mowery
regarding the possibility that Drichas and the pursuing officer may have encountered "some traffic"
at some point is factually insufficient when measured by the appropriate factual sufficiency standards
to allow a jury to conclude the vehicle, as used by Drichas, was a deadly weapon. Further, when
viewed in a neutral light and weighed against contrary evidence found in Woolridge's testimony, the
jury's verdict is clearly wrong and manifestly unjust, and the great weight and preponderance of the
evidence presented contradicts the jury's verdict. The evidence supporting the deadly weapon
finding is thus also factually insufficient on that basis. 

 As pointed out by the Texas Court of Criminal Appeals, reversal of the judgment and remand
for a new trial is the proper remedy when a court of appeals finds that evidence is factually
insufficient. Drichas, 175 S.W.3d at 799. 

 Accordingly, we reverse the deadly weapon finding, based on the factual insufficiency of the
evidence, and remand for a new trial on that issue. (8)



 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 15, 2007

Date Decided: February 16, 2007


Publish
1. Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).
2. Williams is both analogous to and distinguishable from the instant case. See Williams v.
State, 946 S.W.2d 432 (Tex. App.--Fort Worth 1997), pet. dism'd, 970 S.W.2d 566 (Tex. Crim.
App. 1998). The Williams court was presented with the issue of jury charge error and, therefore, was
called on to review the record to determine whether the deadly weapon issue was raised at all by the
evidence. Id. Pointing out that the record demonstrated there was no traffic on the roadway as
Williams drove under the influence of alcohol, the Williams court concluded the record did not
support the submission of the deadly weapon issue to the jury. Id. at 435-36. Here, we are looking
for the same kind of evidence for which the Williams court examined the record, but for a different
purpose. We are faced with an issue of sufficiency of the evidence to support the jury's affirmative
finding that Drichas used a deadly weapon while evading arrest or detention. Our conclusion,
therefore, has a different impact in that the record may have raised the issue sufficiently to warrant
submission of the issue to the jury and still fail to contain factually sufficient evidence to support the
jury's affirmative finding.
3. We will, necessarily, set out those facts in detail so that we may then apply the standard to
those facts.
4. As noted in our original opinion, this incident occurred before the commission of the alleged
offense and therefore fails to qualify as use of a deadly weapon during the commission of the offense
charged.
5. We recognize the evidence did show there were police officers in pursuit of Drichas' vehicle,
and we reiterate our view, expressed in a footnote in our original opinion, that police officers should
not be excluded from the class of persons capable of being endangered by the driver of a fleeing
vehicle. However, being mindful of the requirement that an actual, rather than hypothetical, person
be endangered, we do not believe evidence of pursuing police officers, without more, establishes
such endangerment. Otherwise, a fleeing motorist could be charged with using a vehicle as a deadly
weapon virtually every time the offense of evading arrest or detention is committed, and this would
be contrary to clear and unequivocal language by the Texas Court of Criminal Appeals in Drichas. 
175 S.W.3d at 799.
6. Mowery explained that the other Texas officers caught up to Woolridge at approximately
the point at which Drichas turned around on Highway 59.
7. We note that Woolridge took over the primary position in pursuit of Drichas and that
Mowery, as an Arkansas police officer, fell in behind the Texas officer when the Texas officer took
over the pursuit. Mowery explains that he was still able to see Drichas' truck throughout the pursuit
until the point that Drichas drove into the mobile home park. The record does not indicate otherwise
how far back Mowery was from the primary position. So, his position behind the Texas officer may
or may not have affected his ability to determine whether they encountered any traffic.
8. Our remand is specifically limited to trial of the issue of the use of a deadly weapon. This
automatically necessitates a new punishment trial where the range will depend on the finding made
at the retrial of the deadly weapon issue.